**EXHIBIT P – FIRST AMENDED COMPLAINT AND JURY DEMAND**

**I. INTRODUCTION**

This is an employment discrimination, retaliation, and wrongful termination action arising under the ADA, ADEA, Title VII, 42 U.S.C. § 1981, OWBPA, and Utah public-policy protections.

Plaintiff was a finance analyst who engaged in protected activity, including requesting reasonable accommodations, opposing discriminatory conduct, filing grievances, and seeking clarification of company policies.

Defendants escalated retaliation, imposed heightened scrutiny, blocked advancement opportunities, and ultimately terminated Plaintiff.

**II. PARTIES**
- Plaintiff Annette S. Vernieri resides in Draper, Utah.
- Defendant Dyno Nobel Americas operates in Utah.
- Defendant Dyno Nobel, Inc. controlled HR and termination decisions.
- Defendant Dyno Nobel Limited is the parent entity with oversight of HR governance and compliance.

**III. JURISDICTION AND VENUE**
- Jurisdiction arises under 28 U.S.C. §§ 1331 and 1343.
- Venue is proper under 28 U.S.C. § 1391 as the events occurred in Utah and Defendants conduct business in this District.

**IV. FACTUAL ALLEGATIONS**

1. Plaintiff consistently met expectations, receiving '2 of 4' ratings while younger, non-disabled colleagues received higher evaluations.

2. In December 2024, Plaintiff filed grievances against management and HR; HR then inserted itself into meetings, altering their tone and content.

3. Plaintiff was removed from her Power BI project and replaced by a younger employee lacking Power BI experience.

4. Plaintiff's termination occurred one hour before her EEOC intake interview.

5. Defendants segregated employees requesting accommodations to a separate area, isolating them from leadership and advancement opportunities.

6. Younger, non-disabled employees received tuition reimbursement promptly, while Plaintiff's was delayed for months.

7. After termination, a younger, non-disabled female was promoted to fill Plaintiff's role, indicating pretext.

8. Plaintiff required therapy and medication adjustments for anxiety and depression caused by Defendants' conduct.

9. Post-termination, Plaintiff learned of Defendants' questionable financial practices explaining their retaliation motive.

10. Between January 2024 and January 2025, Plaintiff applied for multiple internal positions, including the Finance Director position listed on Dyno Nobel's careers site. Plaintiff was rejected for 100% of these postings.

11. For the Finance Director position, Plaintiff received confirmation from a recruiting manager that the salary range was $165,000 to $200,000. Shortly after Plaintiff submitted a separate Senior Finance Manager application, Human Resources informed her that interviews for the position by the hiring manager had "already conducted the interviews and selected a candidate for the role" even though her application predated the closing of the posting. The position was then removed from the company's careers website without notice.

12. These denials occurred shortly after Plaintiff filed internal grievances and renewed her accommodation requests, demonstrating retaliatory motive and disparate treatment when compared to younger, non-disabled, or non-complaining employees who were selected for interviews and promotions during the same period.

13. Following Plaintiff's termination, Defendants posted new job requisitions for a Paralegal and a General Counsel – Government Contracts position, and later a Vice President of Legal (Dyno Nobel Limited) position. Upon information and belief, these hires were intended to expand compliance oversight in direct response to Plaintiff's protected disclosures and grievances regarding governance and reporting practices.

14. Plaintiff believes that the timing and nature of these compliance-related hires reflected Defendants' recognition of the validity and materiality of the issues she had raised in good faith, further evidencing retaliation for her protected disclosures to internal management and external government agencies.

**V. CLAIMS FOR RELIEF**

Count I – Disability Discrimination (ADA) – 42 U.S.C. § 12112(a), (b)(1)

Count II – Failure to Accommodate and Interactive Process (ADA) – 42 U.S.C. § 12112(b)(5)(A)

Count III – Retaliation and Interference (ADA) – 42 U.S.C. § 12203(a)-(b)

Count IV – Age Discrimination (ADEA) – 29 U.S.C. § 623

Count V – Willful ADEA Violation and Liquidated Damages – 29 U.S.C. § 626(b)

Count VI – Title VII Retaliation and Disparate Treatment – 42 U.S.C. § 2000e-3(a)

Count VII – Race/Ethnicity Discrimination – 42 U.S.C. § 1981

Count VIII – OWBPA Violations – 29 U.S.C. § 626(f)

Count IX – Wrongful Termination in Violation of Public Policy (Utah Law)

Count X – Negligent Supervision and Retention (Utah Law)

Count XI – Negligent Infliction of Emotional Distress (Utah Law)

Count XII – Retaliation in Violation of Federal and State Public Policy (Whistleblower Activity)

15. Plaintiff incorporates all preceding paragraphs.
16. Plaintiff engaged in protected activity under federal and state law by reporting and opposing conduct she reasonably believed violated laws and regulations governing truthful financial reporting, vendor payment practices, and compliance with U.S. regulatory and ethical standards.
17. Plaintiff made good-faith inquiries and disclosures concerning issues implicating public policy and potential compliance obligations of Dyno Nobel and its related entities, including those governed by U.S. securities, commodities, and contracting laws.
18. Defendants retaliated against Plaintiff by isolating her, denying internal advancement opportunities, escalating scrutiny, and ultimately terminating her employment.
19. Defendants' subsequent hiring of additional compliance personnel, including a Paralegal, General Counsel – Government Contracts, and Vice President of Legal (Dyno Nobel Limited), further demonstrates recognition of the issues Plaintiff raised and supports a finding of retaliatory motive.

20. Defendants' actions contravened the clear and substantial public policies embodied in federal and Utah law protecting employees who report suspected violations, seek clarification of compliance obligations, or refuse to acquiesce in practices they reasonably believe unlawful.
21. Plaintiff seeks all relief available under Utah common law and applicable federal public policy doctrines, including compensatory, punitive, and equitable relief.

## VI. DAMAGES AND RELIEF

Plaintiff requests all available relief, including back pay, front pay, compensatory for emotional distress, unequal treatment, pain and suffering, punitive damages for willful or reckless disregard (where permitted), liquidated damages under ADEA for willfulness, injunctive and declaratory relief, medical expenses, cost of therapy and medication reimbursement; equitable and injunctive relief; and attorneys' fees and costs, pre-and post-judgement interest, costs, and any further remedy the Court deems just and proper.

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## VIII. RELIEF SOUGHT SUMMARY TABLE

| Claim | Statute | Remedies |
|---|---|---|
| ADA Discrimination | 42 U.S.C. § 12112 | Compensatory, Punitive, Back Pay |
| Failure to Accommodate | 42 U.S.C. § 12112(b)(5)(A) | Injunctive, Compensatory |
| ADA Retaliation | 42 U.S.C. § 12203 | Compensatory, Punitive |
| ADEA | 29 U.S.C. § 623 | Back Pay, Liquidated |
| Title VII Retaliation | 42 U.S.C. § 2000e-3(a) | Compensatory, Punitive |
| Race/Ethnicity Discrimination | 42 U.S.C. § 1981 | Compensatory, Punitive |
| OWBPA | 29 U.S.C. § 626(f) | Declaratory, Equitable Relief |
| Utah Wrongful Termination | Utah Law | Back Pay, Emotional Distress |
| Negligent Supervision | Utah Law | Compensatory |
| Negligent Infliction of Emotional Distress | Utah Law | Emotional Distress Damages |
| Whistleblower/Public Policy Retaliation | Federal & Utah Law | Compensatory, Punitive, Equitable |