Annette S. Vernieri
14350 S. Lapis Drive
Draper, Utah 84020
Email: vernieri.lawsuit@pm.me
Pro Se Plaintiff

**IN THE UNITED STATES DISTRICT COURT DISTRICT OF UTAH**

Annette S. Vernieri,
Plaintiff,

vs.

Dyno Nobel Inc.,
Defendants.

FILED
2026 APR 24 PM 1:18
CLERK
U.S. DISTRICT COURT

Case No.: 2:25-cv-00789-DAK-DBP
District Judge Dale A. Kimball

Chief Magistrate Judge: Dustin B. Pead

**THIRD AMENDED COMPLAINT**

Plaintiff Annette S. Vernieri ("Plaintiff" or "Ms. Vernieri"), proceeding pro se, alleges as follows against Defendant Dyno Nobel, Inc. ("Defendant" or "Dyno"):

I. NATURE OF THE ACTION

1. This is an action for employment discrimination, hostile work environment, failure to accommodate, retaliation, and wrongful termination. Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA").

2. Plaintiff alleges that during her employment with Dyno Nobel, Inc., she was subjected to discrimination and a hostile work environment based on her race, color, and national origin; disability discrimination and failure to accommodate;

retaliation for protected complaints and accommodation requests; age discrimination; and ultimately termination in a reduction-in-force ("RIF") used as pretext for unlawful motives.

## II. JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 because they arise under Title VII, the ADA, and the ADEA.

4. Venue is proper in the District of Utah under 28 U.S.C. § 1391 because Defendant Dyno Nobel, Inc. is a U.S.-based corporate entity operating in this District and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including at Dyno's offices in Salt Lake City, Utah.

## III. PARTIES

5. Plaintiff is an individual residing in Draper, Utah (or current city/state). At all relevant times, Plaintiff was employed by Dyno Nobel, Inc. in a finance position supporting its supply chain operations.

6. Defendant Dyno Nobel, Inc. is a U.S.-based corporate entity and an "employer" within the meaning of Title VII, the ADA, and the ADEA.

7. Pursuant to the Court's March 31, 2026 order affirming the magistrate judge's Reports and Recommendations, Dyno Noble Americas, Inc. and Dyno Nobel Limited have been dismissed from this case. Plaintiff proceeds in this Third Amended Complaint only against Dyno Nobel, Inc.

IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. On or about February 18, 2025, Plaintiff filed a Charge of Discrimination, Agency Charge No. 540-2024-04999, with the EEOC, initially naming "Dyno Nobel Americas," and asserting discrimination based on color, disability, race, and retaliation.

9. On or about July 7, 2025, Plaintiff filed an Amended Charge of Discrimination in the same Agency Charge No. 540-2024-04999, adding claims of age discrimination and retaliation.

10. On or about July 14, 2025, the EEOC issued a Determination and Notice of Rights letter to Plaintiff with respect to the above-referenced charge.

11. Plaintiff filed this lawsuit within ninety (90) days of her receipt of the Notice of Rights.

12. Plaintiff alleges that Dyno Nobel, Inc. was effectively identified and on notice through the EEOC charge and its amendments, given the identical business address, overlapping management, involvement of its HR department, and the

fact that Plaintiff's employment relationship and all complained-of conduct were with Dyno Nobel, Inc.

13. To the extent any issue exists regarding the precise naming of the employing entity in the EEOC charge, Plaintiff alleges that Dyno Nobel, Inc. had actual notice of the charges and participated in the related proceedings, and that her claims against Dyno Nobel, Inc. fall within the scope of her EEOC allegations and the EEOC's investigation.

V. FACTUAL ALLEGATIONS

A. Job Role, Responsibilities, and Performance

14. Dyno Nobel, Inc. hired Plaintiff into a finance role supporting its supply chain operations, with the title "Analyst" while assigned responsibilities consistent with a Senior Finance Analyst and Controller-level work.

15. Plaintiff's responsibilities included monthly close and reporting for numerous cost centers, SAP and Concur reporting, and analysis for Dyno Nobel, IPL, and other business units, supporting multiple stakeholders.

B. July–August 2023 Discriminatory Incidents and Complaints

16. On or about July 11, 2023, Plaintiff's team held a "Hawaiian Shirt"–themed event involving Hawaiian imagery and food; as a Hawaiian-born woman of Asian

and Native Hawaiian descent, Plaintiff found this culturally insensitive and raised concerns with her manager and HR.

17. On or about August 1, 2023, a coworker stated to Plaintiff that she was "at least half Asian and supposed to be good at math," after questioning a calculation.

18. Plaintiff reported this comment to HR; the coworker acknowledged he might "be hearing from HR," and HR later disciplined him.

19. Defendant admits that Plaintiff raised a concern about the "Hawaiian Shirt" event and that a coworker made a comment similar to the one alleged, and that Plaintiff raised concerns to HR.

C. Retaliatory Pattern and Performance Treatment

20. After Plaintiff's July–August 2023 complaints, Plaintiff's relationship with her manager deteriorated, including canceled one-on-one meetings, reduced communication, exclusion from opportunities, and increasingly negative characterizations of her performance.

21. On May 8, 2024, Plaintiff emailed her manager detailed questions seeking clear expectations and performance criteria for her FY24 mid-year review.

22. Written mid-year feedback was delayed for several months; when provided on August 15, 2024, it criticized various competencies while acknowledging that Plaintiff was handling significant responsibilities and complex work.

23. Plaintiff alleges that this pattern of shifting performance standards and delayed feedback was retaliatory and began after she complained of discrimination.

D. Denied Advancement Opportunities

24. In early 2024, Dyno Nobel posted a Finance Director – Supply Chain role with duties overlapping work Plaintiff was already performing. Plaintiff applied but was not interviewed, despite her internal experience.

25. In late 2024, Dyno Nobel posted a Director, Integrated Business Planning position. Plaintiff expressed interest but was denied an interview; a senior leader told her she lacked experience and would be "skipping levels" from Analyst to Director and declined to provide the salary range.

26. These denials occurred after Plaintiff had raised discrimination concerns and while she continued to perform higher-level responsibilities.

E. Formal Retaliation Grievance and HR Investigation

27. On or about September 24–25, 2024, Plaintiff submitted a formal written retaliation grievance, describing a pattern of negative treatment after her discrimination complaints.

28. HR investigator Kelly Carter interviewed Plaintiff on October 24, 2024, during which Plaintiff described her discrimination complaints, canceled meetings, exclusion, negative feedback, and impacts on her mental health and career.

29. On December 10, 2024, HR informed Plaintiff that it had found "no evidence" of discrimination or retaliation. Plaintiff responded in writing, explaining why she believed the investigation was incomplete and failed to address key facts.

F. Disabilities, Accommodation Requests, and Retaliation

30. Plaintiff has documented mental-health conditions, including anxiety and depression, that substantially limit one or more major life activities and for which she received treatment and accommodations recommendations.

31. In 2024–2025, Plaintiff disclosed these conditions to Dyno and requested reasonable accommodations, including temporary work-from-home, adjustments to workload, and allowing a support person to attend certain HR meetings.

32. Defendant admits it engaged in the ADA interactive process. Plaintiff alleges that the process was delayed and incomplete, and that core accommodations—

such as allowing a support person in high-stress HR meetings and appropriately adjusting workload—were effectively denied.

G. Termination in Reduction-in-Force and OWBPA Issues

33. On February 10, 2025, Dyno terminated Plaintiff's employment, stating that she was included in a reduction-in-force.

34. Defendant admits that Plaintiff was terminated on February 10, 2025, and that this ended the interactive process regarding her pending accommodation requests.

35. In connection with Plaintiff's February 10, 2025 termination in a reduction-in-force, Dyno presented Plaintiff with a severance agreement that referenced an "Exhibit A" but did not include the Exhibit or any Older Workers Benefit Protection Act (OWBPA) disclosure identifying the ages and job titles of individuals selected for and not selected for the RIF.

36. Defendant admits that the severance agreement referenced an "Exhibit A" and that an OWBPA disclosure was not provided with the severance agreement. Plaintiff alleges that this failure to provide the required OWBPA disclosures for an age-based RIF is inconsistent with a lawful, neutral RIF process and supports an inference that the termination decision and RIF were not handled in a compliant or non-discriminatory manner.

37. Plaintiff has suffered lost wages and benefits, emotional distress, and exacerbation of her mental-health conditions as a direct result of Defendant's conduct.

VI. CLAIMS FOR RELIEF

Count I – Disability Discrimination (ADA)

38. Plaintiff incorporates paragraphs 1–38.

39. Plaintiff is an individual with a disability within the meaning of the ADA, based on her diagnosed anxiety, depression, and related conditions.

40. Plaintiff was qualified to perform the essential functions of her finance role, as evidenced by her successful handling of complex, multi-unit responsibilities.

41. Defendant knew of Plaintiff's disabilities and subjected her to adverse actions—including negative performance treatment, denial of advancement, and termination in the RIF—because of her disabilities and/or because it regarded her as disabled.

42. Defendant's proffered reasons for its actions are pretextual. As a direct and proximate result, Plaintiff suffered economic and non-economic damages.

Count II – Failure to Accommodate (ADA)

43. Plaintiff incorporates paragraphs 1–43.

44. Plaintiff requested reasonable accommodations, including adjusted workload, support in meetings, and the presence of a support person at certain HR/retaliation-policy meetings.

45. Although Defendant acknowledges an interactive process, Plaintiff alleges it failed to timely and effectively provide requested accommodations, causing her to continue to experience exacerbated symptoms and additional work-related harm.

46. Defendant's failure to provide reasonable accommodations violated the ADA and caused Plaintiff damages.

Count III – Retaliation (ADA, Title VII, ADEA)

47. Plaintiff incorporates paragraphs 1–47.

48. Plaintiff engaged in protected activity by: complaining to management and HR about the Hawaiian Shirt event and the "half Asian" comment; filing a formal retaliation grievance in September 2024; requesting ADA accommodations; and participating in the EEOC process and sending a demand letter.

49. After this protected activity, Defendant undertook adverse actions, including negative performance evaluations, denial of interviews and promotions for Director roles, and termination in the February 10, 2025 RIF.

50. The timing and pattern of these actions support a causal connection between Plaintiff's protected activity and the adverse actions. Defendant's conduct constitutes retaliation under Title VII, the ADA, and the ADEA and has caused Plaintiff damages.

Count IV – Age Discrimination (ADEA)

51. Plaintiff incorporates paragraphs 1–51.

52. At all relevant times, Plaintiff was over forty (40) and within the ADEA's protected class.

53. Plaintiff was qualified for her existing position and for the higher-level positions for which she sought consideration.

54. Younger, less-experienced employees were treated more favorably with respect to advancement and RIF outcomes, while Plaintiff was denied interviews and ultimately included in the RIF.

55. Plaintiff's age was a motivating factor in these decisions, in violation of the ADEA, and she suffered damages as a result.

Count V – Hostile Work Environment (ADA, Title VII, ADEA)

56. Plaintiff incorporates paragraphs 1–56.

57. Plaintiff was subjected to unwelcome conduct based on her race, color, national origin, disability, and age, including culturally insensitive events, the "half Asian and supposed to be good at math" comment, microassaults, dismissive responses to her complaints, and ongoing negative and shifting performance treatment.

58. This conduct, viewed collectively, was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create a hostile work environment.

59. Defendant knew or should have known about this environment through Plaintiff's repeated complaints and internal investigations, but failed to take appropriate corrective action. Plaintiff suffered damages as a result.

Count VI – Race and National Origin Discrimination (Title VII)

60. Plaintiff incorporates paragraphs 1–60.

61. Plaintiff is a woman of Hawaiian, Asian, and Native Hawaiian descent and thus within Title VII's protected classes.

62. Plaintiff was qualified and performing competently when she was subjected to adverse treatment, including discriminatory remarks, culturally insensitive events, denial of advancement, and termination in the RIF.

63. Non-Hawaiian, non-Asian, and/or non-minority employees were treated more favorably with respect to workplace respect, opportunities, and RIF decisions.

64. Plaintiff's race, color, and national origin were motivating factors in Defendant's adverse decisions, in violation of Title VII, causing her damages.

VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant Dyno Nobel, Inc., and award the following relief:

(a) Back pay and lost benefits from the date of termination to the date of judgment;

(b) Front pay and/or reinstatement to a comparable position;

(c) Compensatory damages for emotional distress, mental anguish, and loss of enjoyment of life;

(d) Punitive damages to the extent permitted by law;

(e) Pre- and post-judgment interest;

(f) Costs of suit and any attorneys' fees and expenses as allowed by statute; and

(g) Such other and further relief as the Court deems just and proper.

VIII. JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: April 24, 2026

Respectfully submitted,

/s/ Annette S. Vernieri

Annette S. Vernieri

Pro se Plaintiff

14350 Lapis Drive

Draper, UT 84020

vernieri.lawsuit@pm.me