Bryan K. Benard, #9023
Sarah M. Perkins, #17297
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101-2194
Telephone: 801.799.5800
BBenard@hollandhart.com
SMPerkins@hollandhart.com

*Attorneys for Dyno Nobel, Inc.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| Annette S. Vernieri,<br><br>Plaintiff,<br><br>vs.<br><br>Dyno Nobel, Inc.,<br><br>Defendant. | **DYNO NOBEL, INC.'S MOTION TO COMPEL DISCOVERY RESPONSES**<br><br>Civil No. 2:25-cv-00789<br><br>Juge Dale A. Kimball<br>Magistrate Judge Dustin B. Pead |

Pursuant to DUCivR 37-1, Dyno Nobel, Inc. moves this Court for an order compelling Plaintiff to produce all documents responsive to Defendant's Requests for Production, supplement her responses to Defendant's Interrogatories, and sign the provided HIPPA release or otherwise enable the release of medical records related to her alleged disability.

Counsel for Defendant has emailed Ms. Vernieri regarding these discovery disputes but has not received a response. Pursuant to the Court's Scheduling Order issued on December 4,

2025, the deadline for fact discovery is May 1, 2026. Counsel for Dyno Nobel can wait no longer for a response from Plaintiff.

On March 13, 2026, Plaintiff was served with Defendant's First Set of Discovery Requests. *See* Exhibit 1. On April 12, 2026, Plaintiff responded to Defendant's Request for Admission and Interrogatories but did not provide a written response to the Requests for Production. *See* Exhibit 2. Following meet and confer efforts, Plaintiff provided documents in response to some, but not all, Requests for Production.

## INTERROGATORIES

Plaintiff's responses to Interrogatories 1, 7, 9, 11, 13, and 17 are currently deficient and Defendant requests that Plaintiff be ordered to supplement as follows:

- **Interrogatory 1**: Supplement the response with respect to RFA Nos. 33 and 34 to provide information regarding additional team-building activities or themed events after July of 2023 which Plaintiff considered insensitive or discriminatory as well as any complaints she made to Dyno Nobel's Human Resources department regarding the same.

- **Interrogatory 7:** Provide names of individuals from the EEOC, UALD, and Attorneys.

- **Interrogatory 9:** Provide the information related to being seen by her disclosed providers.

- **Interrogatory 11:** Provide information regarding whistleblower-related submissions to certain agencies.

- **Interrogatory 13:** Provide new salary information as of March 28, 2026.

- **Interrogatory 17:** Complete the provided HIPPA release so that medical records can be obtained from Plaintiff's disclosed providers - Ammon Veil, Angela White, and Uma Dom. *See* Exhibit 3.

## REQUESTS FOR PRODUCTION

Plaintiff has not provided written responses or objections to the Requests for Production or documents in response to Requests 4, 7, 8, 11, 12, 13, 14, 15, 17, 18, and 19. Plaintiff has waived any objections and must produce all documents responsive to all requests for production.

## MEDICAL RECORDS

Due to Plaintiff's refusal to complete the HIPPA release, and out of an abundance of caution, Defendant sent subpoenas for medical records to Plaintiff's disclosed providers. However, such providers are refusing to provide documents and medical records due to the lack of a release from Plaintiff allowing such disclosure. *See* Exhibit 4. Defendant requests that the Court order Plaintiff to sign the HIPPA release provided or alternatively, direct such providers to release Plaintiff's medical records. Defendant also requests the Court allow it to obtain medical records from Plaintiff's disclosed providers following the current fact discovery deadline due to Plaintiff's failure to cooperate.

Finally, if Plaintiff continues to refuse to provide such documents, Defendant requests the Court enter discovery and/or terminating sanctions against Plaintiff prohibiting her from asserting she has a qualifying disability under the ADA.

Dated this 1st day of May, 2026.

HOLLAND & HART LLP

/s/ *Bryan K. Benard*
Bryan K. Benard
Sarah M. Perkins
*Attorneys for Defendant Dyno Nobel, Inc.*

-3-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2026, I caused to be presented the foregoing

**DYNO NOBEL, INC.'S MOTION TO COMPEL DISCOVERY RESPONSES** to the

Clerk of Court for filing and uploading to the CM/ECF system which will send

notification of such filing to the parties of record.  In addition, I caused a true and correct

copy to be served via email at the following email addresses:

Annette Vernieri
vernieri.lawsuit@pm.me

Annette Vernieri
annettevernieri@gmail.com


*/s/      Sarah M. Perkins*

37756901_v1

# EXHIBIT 1

Bryan K. Benard, #9023
Sarah M. Perkins, #17297
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101-2194
Telephone: 801.799.5800
BBenard@hollandhart.com
SMPerkins@hollandhart.com

*Attorneys for Dyno Nobel, Inc. and Dyno Nobel Limited*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ANNETTE S. VERNIERI,<br><br>        Plaintiff,<br><br>vs.<br><br>DYNO NOBEL AMERICAS, INC., DYNO NOBEL, INC., AND DYNO NOBEL LIMITED,<br><br>        Defendants. | **DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSIONS, INTERROGATORIES, AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF**<br><br>Civil No. 2:25-cv-00789<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Dustin B. Pead |

Defendant Dyno Nobel, Inc. ("Defendant" or "Dyno Nobel"), by and through its counsel,

Holland & Hart, LLP, and pursuant to Rules 33, 34, and 36 of the Utah Rules of Civil Procedure

submit the following Requests for Admissions, Interrogatories, and Requests for Production of

Documents to Plaintiff Annette S. Vernieri ("Plaintiff"), to be answered separately, in full, in

writing, and under oath, with a copy of the answers and documents to be served on Defendant's

counsel within thirty (30) days after service at the offices of Holland & Hart LLP, Attention

Bryan Benard and Sarah Perkins, 222 South Main Street, Suite 2200, Salt Lake City, Utah 84101

and/or via email to BBenard@hollandhart.com and SMPerkins@hollandhart.com.  If Plaintiff fails to respond within 30 days to the Requests for Admissions, the Requests for Admissions shall be deemed admitted.

<b><u>INSTRUCTIONS</u></b>

1.      In answering the Requests for Production of Documents, Requests for Admissions, and Interrogatories, Plaintiff must furnish all information available to Plaintiff or subject to Plaintiff's reasonable inquiry, including information in the possession of Plaintiff's attorneys, accountants, advisors, or other persons, if any, directly or indirectly employed by or connected with Plaintiff and anyone else otherwise subject to Plaintiff's control, and all information communicated to Plaintiff by others.

2.      If any Interrogatory cannot be answered in full, Plaintiff should answer it to the extent possible, specify the reason for Plaintiff's inability to provide a complete answer to the Interrogatory, and state whatever information and knowledge Plaintiff has regarding the unanswered portion.

3.      Whenever, in the course of answering these Interrogatories or Requests for Admissions, information is called for which is other than that within the personal knowledge of the person executing these answers, Plaintiff is requested, in addition to providing such information, to provide the name, address, and telephone number of each person providing such information to Plaintiff, or if the information is obtained from a writing or other document, to identify each such writing or document.

4.      In answering or responding to these Requests for Production of Documents, Requests for Admissions, and Interrogatories, please state the Request or Interrogatory

2

immediately preceding your answer or response.  In responding to the Requests for Production of Documents, for each document produced, please specify which request(s) for production it relates.

5.      If any document requested was formerly in your possession, custody or control and has since been lost or destroyed, Respondent requests that you:

(a)      describe in detail the nature of the document and its content;

(b)      identify the person(s) who prepared, generated, or authorized preparation of the document and, if applicable, the person to whom the document was sent;

(c)      specify the date on which the document was prepared, transmitted, or both;

(d)      specify the date on which the document was lost or destroyed, and, if destroyed, the conditions of or reasons for such destruction, and identify the person(s) requesting and/or performing the destruction.

6.      Each of the following Requests for Production of Documents, Requests for Admissions, and Interrogatories is continuing in nature, such that supplemental responses are required if new information is received and/or additional documents are created, obtained, or located that reveal an original response or answer was incorrect when made, or is no longer true or complete in light of such new information and/or additional documents.  This duty to supplement shall be continuing through the course of litigation, and such supplementary responses and/or answers are hereby requested to be served immediately upon discovery or identification of such information and/or documents.

7.      If you withhold from production any document on the ground that it is protected by any privilege or by the work product doctrine, provide a privilege log containing the following information:

3

    (a)    the date of the document or, if undated, the approximate date you believe the document was prepared;

    (b)    the identity of the author(s);

    (c)    the identity of any person(s) to whom the document was sent or delivered;

    (d)    the identity of any persons(s) who received copies of the document;

    (e)    the title of the file in which the document was contained, whether in a hard file or electronic file or directory;

    (f)    the identity of any person(s) who prepared or maintained the file;

    (g)    the subject of the document; and

    (h)    the specific privilege claimed.

### DEFINITIONS

1.    "You" and "your" mean or refer to Plaintiff Annette S. Vernieri and Plaintiff's predecessors in interest, any of Plaintiff's attorneys, agents, representatives, and all other persons acting or purporting to act on behalf of Plaintiff. Information should be provided on each individual where necessary.

2.    "Any" includes the word "all" and vice versa.

3.    "Person(s)" means or refers to, without limitation, any natural person and business association and entities, whether for profit, non-profit or governmental.

4.    "Document" and "documents" shall the have meaning set forth in and the broadest sense permitted by Utah R. Civ.P.34(a). This includes any and all electronically stored information which is to be produced in PDF format.

5.    "Communication(s)" means any oral, written, or electronic transmission of information including, without limitation, meetings, discussions, conversations, telephone calls, memoranda, letters, telecopies, telexes, conferences, seminars, messages, notes, or memoranda.

6.    "Identify" or "identity," when used in reference to a person, shall mean to list that person's:

(a)    full name;

(b)    present home and business address (including street name and number, city, town, and state); and

(c)    present business affiliation and present position held therein.

7.    "Identify" with respect to a document means to specify the following:

(a)    the date such document was prepared;

(b)    the person who authored or prepared the document;

(c)    the recipient(s) of the document;

(d)    the type of document (e.g., memo, letter, etc.);

(e)    the general subject matter of the document;

(f)    and the person who has custody of the document.

8.    "Complaint" means Plaintiff's Complaint you filed in this case on September 10, 2025.

9.    "EEOC Charge" means Agency Charge No. 540-2024-04999.

10.    "Amended EEOC Charge" means the amended charge filed on July 7, 2025.

11.    "Termination Date" means February 10, 2025.

12.     "Interactive Process" means the process engaged in between Plaintiff and Defendant pursuant to the Americans with Disabilities Act.

13.     "Concern" or "Concerning" means directly or indirectly relating, referring, containing, regarding, pertaining, discussing, mentioning, describing, responding to, identifying, indicating knowledge of, constituting or contradicting.

## REQUESTS FOR ADMISSIONS

**Request for Admission No. 1**:  Admit that you were employed by Dyno Nobel, Inc. at all times relevant to the allegations in the Complaint.

**Request for Admission No. 2**:  Admit that your employment was terminated from Dyno Nobel on February 10, 2025, as part of a reduction in force.

**Request for Admission No. 3**: Admit that your employment was terminated from Dyno Nobel on February 10, 2025, as a result of a business restructuring.

**Request for Admission No. 4**:  Admit that other employees were also terminated from Dyno Nobel on or about February 10, 2025, as part of the same reduction in force.

**Request for Admission No. 5**: Admit that other employees were also terminated from Dyno Nobel on or about February 10, 2025, as a result of a business restructuring.

**Request for Admission No. 6**: Admit that you are aware of multiple reductions in force and restructuring that took place at Dyno Nobel within one year of your employment separation.

**Request for Admission No. 7**:  Admit that you were subject to Dyno Nobel's Employee Handbook and company policies and procedures while employed by Dyno Nobel, Inc.

**Request for Admission No. 8**:  Admit that you received a copy of the Dyno Nobel Employee Handbook on or about September 19, 2022.

6

**Request for Admission No. 9**:  Admit that you have no personal knowledge of any entity legally organized and operating under the name "Dyno Nobel Americas, Inc.".

**Request for Admission No. 10**: Admit that you have not been employed by "Dyno Nobel Limited" at any time.

**Request for Admission No. 11**:  Admit that Plaintiff has no personal knowledge of Dyno Nobel Limited conducting any employment operations within the District of Utah.

**Request for Admission No. 12**:  Admit that you filed your initial EEOC Charge of Discrimination, Agency Charge No. 540-2024-04999, on February 18, 2025.

**Request for Admission No. 13**:  Admit that your initial EEOC Charge named "Dyno Nobel Americas" as the respondent, not Dyno Nobel, Inc. or Dyno Nobel Limited.

**Request for Admission No. 14**:  Admit that prior to your filing of the EEOC Charge, you did not tell anyone at Dyno Nobel of your intent to file such charge.

**Request for Admission No. 15**: Admit that your initial EEOC Charge did not assert a claim for age discrimination.

**Request for Admission No. 16**:  Admit that you first asserted a claim for age discrimination in your Amended EEOC Charge filed on July 7, 2025.

**Request for Admission No. 17**:  Admit that your Amended EEOC Charge named "Dyno Nobel Americas" as the respondent, not Dyno Nobel, Inc. or Dyno Nobel Limited.

**Request for Admission No. 18**:  Admit that at no time prior to filing your Complaint did you file an EEOC charge naming Dyno Nobel, Inc. or Dyno Nobel Limited as respondents.

**Request for Admission No. 19**:  Admit that you disclosed one or more disabilities to Dyno Nobel during your employment.

**Request for Admission No. 20**:  Admit that you submitted one or more formal requests for accommodation to Defendant during your employment.

**Request for Admission No. 21**: Admit that you first contacted Dyno Nobel's Human Resources department to discuss your requests for reasonable accommodations on or about March 9, 2024.

**Request for Admission No. 22**:  Admit that Dyno Nobel engaged in an interactive process with you regarding your accommodation requests made during your employment.

**Request for Admission No. 23**:  Admit that you were allowed to have a support person involved during the interactive process with Dyno Nobel regarding your accommodation requests.

**Request for Admission No. 24**:  Admit that Dyno Nobel provided you one or more reasonable accommodations during your employment.

**Request for Admission No. 25**:  Admit that one or more of your reasonable accommodations were still in place at the time of your termination on February 10, 2025.

**Request for Admission No. 26**:  Admit that you did not file a formal internal grievance with Dyno Nobel challenging the denial of any accommodation requests prior to your termination on February 10, 2025.

**Request for Admission No. 27**:  Admit that you did not file a formal internal grievance with Dyno Nobel regarding dissatisfaction with implementation of any accommodation requests that were granted during your employment.

8

**Request for Admission No. 28**:  Admit that in July of 2023 you contacted Dyno Nobel's Human Resources department to make a complaint regarding a "Hawaiian Shirt" themed team-building activity being organized and/supported by Mr. Roth.

**Request for Admission No. 29**:  Admit that Dyno Nobel's Human Resources department contacted Mr. Roth regarding the "Hawaiian Shirt" event after receiving your complaint.

**Request for Admission No. 30**:  Admit that Dyno Nobel's Human Resources department investigated your concern.

**Request for Admission No. 31**:  Admit that you also discussed your concerns regarding the "Hawaiian Shirt" event with Mr. Roth directly.

**Request for Admission No. 32**:  Admit that in response to your concerns related to the "Hawaiian Shirt" event Mr. Roth apologized, renamed the event as "Tropical Thursday", stated it was not his intent to be insensitive, and committed to try harder to think through things in the future.

**Request for Admission No. 33**:  Admit that after the complained of "Hawaiian Shirt"/"Tropical Thursday" event in July of 2023, there were not any team-building activities or themed events which you considered insensitive or discriminatory.

**Request for Admission No. 34**:  Admit that following July 2023 you did not make any complaints to Dyno Nobel's Human Resources department regarding any team-building activities or themed events being insensitive or discriminatory.

**Request for Admission No. 35**:  Admit that in August of 2023 you contacted Dyno Nobel's Human Resources department to report an incident that occurred  while working with Mr. Deppe regarding him making inappropriate and discriminatory comments.

9

**Request for Admission No. 36**:  Admit that following your report to Dyno Nobel's Human Resources department regarding the interaction with Mr. Deppe an investigation was completed.

**Request for Admission No. 37**:  Admit that Dyno Nobel's Human Resources department spoke to you about whether you were comfortable working in the office and offered to allow you to work from home during their investigation of the incident with Mr. Deppe, an offer which you accepted.

**Request for Admission No. 38**:  Admit that on or about August 18, 2023, Dyno Nobel's Human Resources department held a meeting with you to discuss the results of their investigation into the incident with Mr. Deppe.

**Request for Admission No. 39**:  Admit that Dyno Nobel's Human Resources department informed you during the meeting, on or about August 18, 2023, that appropriate disciplinary and corrective actions were being taken with Mr. Deppe.

**Request for Admission No. 40**:  Admit that on or about September 25, 2024, you contacted Dyno Nobel's Human Resources department to make a complaint regarding alleged discrimination and retaliation by Mr. Roth.

**Request for Admission No. 41**:  Admit that following your September 2024 report alleging discrimination and retaliation by Mr. Roth Dyno Nobel's Human Resources department conducted an investigation.

**Request for Admission No. 42**:  Admit that upon completion of Dyno Nobel's Human Resources department's investigation regarding your allegations of discrimination and retaliation by Mr. Roth, you were informed of the results of the investigation.

10

**Request for Admission No. 43**:  Admit that you did not provide notice to Dyno Nobel or any of their employees of your EEOC intake interview prior to your termination on February 10, 2025.

**Request for Admission No. 44**:  Admit that you do not have documentary evidence establishing that any decision-maker involved in your termination of employment had knowledge of any protected EEOC activity prior to your termination on February 10, 2025.

## INTERROGATORIES

**Interrogatory No. 1:**       With respect to any response to the Requests for Admissions which is anything other than an unqualified admission, identify the Request, provide an explanation and description of the facts and contentions related to the Request, an explanation of why the Request is not being admitted in part or in whole, and a provide a full explanation and disclosure of all related facts and evidence to support the denial or partial denial.

**Interrogatory No. 2:**       Please identify each and every person you expect to call as a witness at the hearing of this matter, including expert witnesses, and for each such person state the subject matter on which he or she is expected to testify and the substance of the facts and opinions to which he or she is expected to testify.

**Interrogatory No. 3:**       Please identify each and every document or other physical or tangible object that you intend to introduce into evidence at the hearing of this matter.

**Interrogatory No. 4:**       Please describe in detail and separately the nature and the amount of any and all damages you claim under each of your claims for relief, and describe in

11

detail the calculations used in determining those damages (including any assumptions therein), and state all facts and opinions that you contend support such damage claims.

**Interrogatory No. 5:**   Please identify and describe in detail, including dates and names of participants, any and all facts that support your contention that you were discriminated against on the basis of a disability in violation of Americans with Disabilities Act and the Utah Antidiscrimination Act.

**Interrogatory No. 6:**   Please identify and explain each and every verbal or written warning you received from Defendant during your employment and the reason for each warning.

**Interrogatory No. 7:**   Please identify every person interviewed by you or on your behalf in connection with this charge of discrimination and the date and place of such interview.

**Interrogatory No. 8:**   Please identify every health care provider including, but not limited to, medical doctors, psychiatrists, psychologists, counselors, therapists, and nurse practitioners, who have evaluated or treated you for any reason (including all individual, marital or family reasons) since January 1, 2022.

**Interrogatory No. 9:**   For each health care provider identified in response to Interrogatory No. 8 identify the dates of care or treatment by each such health care provider; the diagnosis and prognosis made by each such health care provider; any treatment given or prescribed by each such health care provider; and all medication prescribed by each such health care provider, including the name of the medication, its purpose, the dosage, and the period of time over which the medication was taken.

**Interrogatory No. 10:**   Identify whether any medical condition(s) existed (or exist) that prevented (or prevent) you from seeking, obtaining, or continuing employment, describe the

12

nature of the condition(s), including the cause of the condition(s), the period of time the condition existed (or exists), and the identity of the health care provider(s) who diagnosed and have treated or are currently treating you for the condition(s).

**Interrogatory No. 11:**    Identify by caption, style, court or agency, court, cause, claim or charge number, and date any and all legal actions in which you have participated, and identify your capacity in each including, but not limited to, plaintiff, respondent, petitioner, defendant, charging party, claimant, witness or other, and the outcome of any and all such court actions or proceedings.

**Interrogatory No. 12:**    Please explain and identify each and every complaint you made to Defendant, along with Defendant's response, regarding any alleged unlawful conduct including, but not limited to, the conduct alleged in your Complaint.

**Interrogatory No. 13:**    Please identify the following information with regard to your efforts or attempts to find employment after your employment ended with Defendant (including any such efforts undertaken before your employment ended with Defendant to find other employment), the name, address, and phone number of each employer with whom you applied for a job and the date of such application; whether you had an interview for any job and, if so, identify the person with whom you interviewed; the terms of any and all offers of employment extended to you; if you declined any job offer, state the reason or reasons for so declining; and if you accepted any job offer, state the duration of such employment and any and all changes to the terms of such employment as compared to the original terms thereof.

**Interrogatory No. 14:**    Identify each employer (including self-employment), other than Defendant, for whom you have worked at any time following your termination on February

13

10, 2025, to the present, including the dates of such employment, the position you held, your reason for leaving, and the terms of your compensation.

**Interrogatory No. 15**:   For any monies of any kind or character whatsoever received by you since the date of your departure from Defendant, from sources including, but not limited to, earnings, unemployment compensation, workers' compensation, disability benefits of any kind, welfare payments, social security benefits of any kind or income from any pension, profit sharing or annuity plan, identify the full name and address of the individual, person, party, governmental entity or organization from which you received such monies; the date(s) you received said monies; the amount(s) of monies so received; whether you will receive further monies and for how long; the reason you received said monies; and identify all documents related thereto.

**Interrogatory No. 16:**   Please explain and identify each and every request for accommodation you made to Defendant, including the date of such request, Defendant's response(s) to each request.

**Interrogatory No. 17:**   Please fill in your date of birth (DOB), as well as sign, and date the attached Limited Authorization to Disclose Limited Medical Information and return it to counsel for Defendant. This will allow Defendant to subpoena and obtain your relevant medical records.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**Request No. 1**:   Produce all documents identified in your answers to the Interrogatories and Requests for Admissions above.

14

**Request No. 2**: Produce all documents used or referred to in preparing your answers to the Interrogatories and Requests for Admissions above.

**Request No. 3**: Produce all documents which evidence, reflect or relate in any way to any of the allegations in Plaintiff's Complaint, EEOC charge, or Amended EEOC charge.

**Request No. 4**: Produce all documents concerning your hiring at Defendant, your employment with Defendant and the end of your employment with Defendant.

**Request No. 5**: Produce all documents concerning your allegations of unlawful conduct on the part of Defendant, including, but not limited to, any complaints or statements made by you to Defendant or any other person concerning such alleged unlawful conduct, and any requests for accommodation.

**Request No. 6**: Produce all documents concerning any meetings, communications, or conversations between you and Defendant, including any current or former officer, employee, or agent of Defendant.

**Request No. 7**: Produce any and all notes, memoranda, correspondence, electronic records, recordings (including, but not limited to, video surveillance and CD videos), policies, manuals, plans, or other documents, personal property or other tangible things concerning Defendant, whether you have received or taken them from Defendant or its premises, before, during, or after your employment with Defendant.

**Request No. 8**: Produce all documents including, but not limited to, correspondence, affidavits, statements, transcripts, notes, or memoranda concerning any statements by any person concerning the events described in Plaintiff's Complaint, EEOC charge, or Amended EEOC charge.

**Request No. 9**:        Produce any and all documents from any and all medical providers including, but not limited to, medical doctors, psychiatrists, psychologists, counselors, therapists, and nurse practitioners, who have evaluated or treated you for any reason (including all individual, marital or family reasons) since January 1, 2022, through present.

**Request No. 10**:        Produce all documents including, but not limited to, memoranda, transcripts, audio or video recordings, reflecting any statements or representations, whether written or oral, made by any current or former officers, employees, representatives, or agents of Respondent related to the issues in Plaintiff's Statement.

**Request No. 11**:        Produce all wage, earnings, or income statements furnished to you by any and all employers or contractors (including any statements of profit from self-employment), from your departure from Defendant to the present.

**Request No. 12**:        Produce all federal and state tax returns (including estimated tax returns) filed by you or on your behalf from 2022 through the date of trial, with all schedules and attachments thereto.

**Request No. 13**:        Produce all documents concerning, or which evidence, reflect or relate in any way to, the damages which you seek in this case.

**Request No. 14**:        Produce any and all documents which reflect any monies received by you from whatever source from your departure with Defendant to the present including, but not limited to, payments from insurance companies and payments from any federal, state or local agency such as worker's compensation, unemployment compensation, Social Security, welfare and disability benefits.

16

**Request No. 15**:    Produce any and all documents concerning any legal action in which you have participated (other than this case), whether as a party, witness, or in any other capacity.

**Request No. 16**:    Produce any and all documents concerning each attempt that you have made since your departure with Defendant, to obtain any position of employment or to secure work of any type including, but not limited to, copies of all versions of resumes, letters and job applications that you have drafted or used to seek employment or work.

**Request No. 17**:    Produce all documents received or filed by you or on your behalf with any state or federal agency or insurance company for any and all unemployment, workers' compensation, or disability, including any and all decisions made by any such agency or insurance company and hearing transcripts from proceedings before such agency.

**Request No. 18**:    Produce all documents including, but not limited to, witness statements, evidencing, regarding, reflecting, or relating in any way to any interviews by you or on your behalf with any individuals in connection with this lawsuit or concerning the events described in your EEOC charge or Amended EEOC charge.

**Request No. 19**:    Produce any and all documents concerning any educational or training classes you have enrolled in from 2022 to the present, and any other documents or evidence that would demonstrate what occupied your time outside of work with Defendant and subsequent to the time you worked for Defendant.

DATED this 13th day of March, 2026.

HOLLAND & HART LLP

/s/ Bryan K. Benard
Bryan K. Benard
Sarah M. Perkins
*Attorneys for Defendants*

17

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of March, 2026, I caused a true and correct copy of

**DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSIONS,**

**INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS** were

served via email to the following:

Annette S. Vernieri
vernieri.lawsuit@pm.me

/s/ Bryan K. Benard_____

37301485_v2

18

# EXHIBIT 2

| | |
|---|---|
| Annette S. Vernieri<br><br>14350 S Lapis Drive<br><br>Draper, Utah 84020<br><br>Email: vernieri.lawsuit@pm.me<br><br>Pro Se Plaintiff | UNITED STATES DISTRICT COURT<br><br>DISTRICT OF UTAH<br><br>Annette S. Vernieri,<br><br>Plaintiff,<br><br>vs.<br><br>Dyno Nobel Inc.,<br><br>Defendants.<br><br>Case No.: 2:25-cv-00789-DAK-DBP<br><br>District Judge Dale A. Kimball<br><br>Chief Magistrate Judge: Dustin B. Pead |

**PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSION**

Plaintiff Annette S. Vernieri, proceeding pro se, responds and objects to Defendants' First Set of Requests for Admission as follows:

**GENERAL OBJECTIONS**

Plaintiff objects to each Request to the extent it is vague, ambiguous, compound, overly broad, unduly burdensome, not proportional to the needs of the case, seeks information not relevant to any claim or defense, calls for a legal conclusion, mischaracterizes the record, assumes facts not established, or seeks information already in Defendants' possession, custody, or control.

Plaintiff further objects to each Request to the extent it seeks information protected by the attorney-client privilege, work-product doctrine, privacy rights, medical confidentiality, whistleblower protections, or any other applicable privilege, immunity, or protection.

Each admission, if any, is limited strictly to the exact wording of the Request and to the information presently known to Plaintiff after reasonable inquiry. No admission should be

construed as adopting Defendants' characterization, legal conclusion, implied premise, causation theory, adequacy contention, or defense. Any response that Plaintiff lacks sufficient information to admit or deny is made after reasonable inquiry based on information presently available.

Plaintiff reserves the right to supplement or amend these responses pursuant to Fed. R. Civ. P. 26(e).

**RESPONSES TO REQUESTS FOR ADMISSION**

**Request for Admission No. 1:** Admit that you were employed by Dyno Nobel, Inc. at all times relevant to the allegations in the Complaint.

**Response to Request for Admission No. 1:**
Admit only that Plaintiff's pay records identify Dyno Nobel Inc. as her employer during the relevant period. Plaintiff does not admit any limitation on the role, involvement, or liability of any other Dyno entity named in the pleadings.

**Request for Admission No. 2:** Admit that your employment was terminated from Dyno Nobel on February 10, 2025, as part of a reduction in force.

**Response to Request for Admission No. 2:**
Admit only that Plaintiff's employment ended on or about February 10, 2025. Deny the remainder, including the characterization that her termination was part of a reduction in force.

**Request for Admission No. 3:** Admit that your employment was terminated from Dyno Nobel on February 10, 2025, as a result of a business restructuring.

**Response to Request for Admission No. 3:**
Admit only that Defendant referenced role change hours before it referred to as restructuring during the termination meeting. Deny that business restructuring was the actual reason for Plaintiff's termination.

**Request for Admission No. 4:** Admit that other employees were also terminated from Dyno Nobel on or about February 10, 2025, as part of the same reduction in force.

**Response to Request for Admission No. 4:**

After reasonable inquiry, Plaintiff lacks sufficient information to admit or deny this Request because Defendants did not provide OWBPA disclosures or other information sufficient to identify whether other employees were terminated as part of the same alleged reduction in force. Therefore denied.

**Request for Admission No. 5:** Admit that other employees were also terminated from Dyno Nobel on or about February 10, 2025, as a result of a business restructuring.

**Response to Request for Admission No. 5:**

After reasonable inquiry, Plaintiff lacks sufficient information to admit or deny this Request because Defendants did not provide information identifying whether any other employees were terminated, when they were terminated, or whether Defendants attributed those actions to the same alleged restructuring. Therefore denied.

**Request for Admission No. 6:** Admit that you are aware of multiple reductions in force and restructuring that took place at Dyno Nobel within one year of your employment separation.

**Response to Request for Admission No. 6:**

Deny. The phrase multiple reductions in force and restructuring is vague and undefined, and Plaintiff does not admit awareness of multiple specific reductions in force within one year of her separation as characterized in this Request.

**Request for Admission No. 7:** Admit that you were subject to Dyno Nobel's Employee Handbook and company policies and procedures while employed by Dyno Nobel, Inc.

**Response to Request for Admission No. 7:**
Admit.

**Request for Admission No. 8:** Admit that you received a copy of the Dyno Nobel Employee Handbook on or about September 19, 2022.

**Response to Request for Admission No. 8:**
Admit.

**Request for Admission No. 9:** Admit that you have no personal knowledge of any entity legally organized and operating under the name "Dyno Nobel Americas, Inc.".

**Response to Request for Admission No. 9:**
Admit only that Plaintiff does not have personal knowledge of a separately incorporated entity legally organized under the exact name Dyno Nobel Americas, Inc. Plaintiff does not admit that she lacked a basis to refer to Dyno Nobel Americas as used in company-related documents and communications.

**Request for Admission No. 10:** Admit that you have not been employed by "Dyno Nobel Limited" at any time.

**Response to Request for Admission No. 10:**
Admit only that Plaintiff was not directly employed by an entity identified to her as Dyno Nobel Limited.

**Request for Admission No. 11:** Admit that Plaintiff has no personal knowledge of Dyno Nobel Limited conducting any employment operations within the District of Utah.

**Response to Request for Admission No. 11:**
Deny. Plaintiff has personal knowledge of documents, reporting structures, financial coding, and parent-company involvement that support her understanding that Dyno Nobel Limited, formerly Incitec Pivot Limited, was involved in matters affecting U.S. operations and issues raised in this case. Plaintiff does not, however, contend in this response that Dyno Nobel Limited served as her direct payroll employer.

**Request for Admission No. 12:** Admit that you filed your initial EEOC Charge of Discrimination, Agency Charge No. 540-2024-04999, on February 18, 2025.

**Response to Request for Admission No. 12:**
Admit.

**Request for Admission No. 13:** Admit that your initial EEOC Charge named "Dyno Nobel Americas" as the respondent, not Dyno Nobel, Inc. or Dyno Nobel Limited.

**Response to Request for Admission No. 13:**

Admit only that the respondent line on the initial EEOC Charge lists Dyno Nobel Americas and does not separately list Dyno Nobel Inc. or Dyno Nobel Limited.

**Request for Admission No. 14:** Admit that prior to your filing of the EEOC Charge, you did not tell anyone at Dyno Nobel of your intent to file such charge.

**Response to Request for Admission No. 14:**

Admit only that Plaintiff does not recall expressly informing Dyno Nobel personnel, prior to the filing of the Charge, that she intended to file an EEOC charge. Plaintiff does not admit that Defendant lacked notice of Plaintiff's protected activity, concerns, or steps toward agency reporting.

**Request for Admission No. 15:** Admit that your initial EEOC Charge did not assert a claim for age discrimination.

**Response to Request for Admission No. 15:**

Admit.

**Request for Admission No. 16:** Admit that you first asserted a claim for age discrimination in your Amended EEOC Charge filed on July 7, 2025.

**Response to Request for Admission No. 16:**

Admit only that Plaintiff first expressly included age discrimination in the amended EEOC Charge submitted in or about early July 2025.

**Request for Admission No. 17:** Admit that your Amended EEOC Charge named "Dyno Nobel Americas" as the respondent, not Dyno Nobel, Inc. or Dyno Nobel Limited.

**Response to Request for Admission No. 17:**

Admit only that the respondent line on the amended EEOC Charge lists Dyno Nobel Americas and does not separately list Dyno Nobel Inc. or Dyno Nobel Limited.

**Request for Admission No. 18:** Admit that at no time prior to filing your Complaint did you file an EEOC charge naming Dyno Nobel, Inc. or Dyno Nobel Limited as respondents.

**Response to Request for Admission No. 18:**

Admit only that Plaintiff's EEOC charges did not separately list Dyno Nobel Inc. or Dyno Nobel Limited in the respondent caption before suit was filed.

**Request for Admission No. 19:** Admit that you disclosed one or more disabilities to Dyno Nobel during your employment.

**Response to Request for Admission No. 19:**

Admit.

**Request for Admission No. 20:** Admit that you submitted one or more formal requests for accommodation to Defendant during your employment.

**Response to Request for Admission No. 20:**

Admit.

**Request for Admission No. 21:** Admit that you first contacted Dyno Nobel's Human Resources department to discuss your requests for reasonable accommodations on or about March 9, 2024.

**Response to Request for Admission No. 21:**

Admit only that Plaintiff submitted a written reasonable accommodation request to HR on or about March 9, 2024.

**Request for Admission No. 22:** Admit that Dyno Nobel engaged in an interactive process with you regarding your accommodation requests made during your employment.

**Response to Request for Admission No. 22:**

Admit only that Dyno Nobel personnel exchanged communications with Plaintiff concerning accommodation requests. Deny to the extent this Request implies that Defendants engaged in a timely, effective, good-faith, or legally sufficient interactive process throughout Plaintiff's employment or on or about February 10, 2025.

**Request for Admission No. 23:** Admit that you were allowed to have a support person involved during the interactive process with Dyno Nobel regarding your accommodation requests.

**Response to Request for Admission No. 23:**

Deny. Plaintiff was not permitted to have the support person or outside support persons of her choosing participate in accommodation meetings.

**Request for Admission No. 24:** Admit that Dyno Nobel provided you one or more reasonable accommodations during your employment.

**Response to Request for Admission No. 24:**

Admit only that Defendant implemented certain measures it characterized as accommodations. Deny to the extent this Request asserts or implies that such measures were reasonable, sufficient, timely, effective, or fully responsive to Plaintiff's requested accommodations.

**Request for Admission No. 25:** Admit that one or more of your reasonable accommodations were still in place at the time of your termination on February 10, 2025.

**Response to Request for Admission No. 25:**

Admit only that certain measures characterized by Defendants as accommodations remained in effect at the time of termination. Deny to the extent this Request implies that Plaintiff's accommodation needs had been fully addressed, that the accommodations in place were adequate, or that Defendants meaningfully engaged with Plaintiff's renewed accommodation-related communication on or about February 10, 2025 before terminating Plaintiff's employment.

**Request for Admission No. 26:** Admit that you did not file a formal internal grievance with Dyno Nobel challenging the denial of any accommodation requests prior to your termination on February 10, 2025.

**Response to Request for Admission No. 26:**

Admit only that Plaintiff did not submit a separate document specifically labeled a formal internal grievance challenging denial of accommodation requests. Deny to the extent this

Request implies that Plaintiff did not object to, challenge, or complain about Defendants' handling of accommodation requests.

**Request for Admission No. 27:** Admit that you did not file a formal internal grievance with Dyno Nobel regarding dissatisfaction with implementation of any accommodation requests that were granted during your employment.

**Response to Request for Admission No. 27:**
Admit only that Plaintiff did not submit a separate document specifically labeled a formal internal grievance challenging the implementation of accommodation measures. Deny to the extent this Request implies that Plaintiff did not express dissatisfaction or raise concerns regarding the delayed, isolating, or ineffective implementation of accommodations.

**Request for Admission No. 28:** Admit that in July of 2023 you contacted Dyno Nobel's Human Resources department to make a complaint regarding a Hawaiian Shirt themed team-building activity being organized and/or supported by Mr. Roth.

**Response to Request for Admission No. 28:**
Admit.

**Request for Admission No. 29:** Admit that Dyno Nobel's Human Resources department contacted Mr. Roth regarding the Hawaiian Shirt event after receiving your complaint.

**Response to Request for Admission No. 29:**
Admit on information presently available to Plaintiff.

**Request for Admission No. 30:** Admit that Dyno Nobel's Human Resources department investigated your concern.

**Response to Request for Admission No. 30:**
Admit only that Human Resources communicated with Plaintiff regarding Plaintiff's concern. Deny to the extent this Request implies a thorough, adequate, neutral, or corrective investigation.

**Request for Admission No. 31:** Admit that you also discussed your concerns regarding the Hawaiian Shirt event with Mr. Roth directly.

**Response to Request for Admission No. 31:**
Admit.

**Request for Admission No. 32:** Admit that in response to your concerns related to the Hawaiian Shirt event Mr. Roth apologized, renamed the event as Tropical Thursday, stated it was not his intent to be insensitive, and committed to try harder to think through things in the future.

**Response to Request for Admission No. 32:**
Admit only that Mr. Roth made statements to that effect. Deny to the extent this Request implies that the matter was fully remedied or that Plaintiff agreed the response was sufficient.

**Request for Admission No. 33:** Admit that after the complained of Hawaiian Shirt/Tropical Thursday event in July of 2023, there were not any team-building activities or themed events which you considered insensitive or discriminatory.

**Response to Request for Admission No. 33:**
Deny.

**Request for Admission No. 34:** Admit that following July 2023 you did not make any complaints to Dyno Nobel's Human Resources department regarding any team-building activities or themed events being insensitive or discriminatory.

**Response to Request for Admission No. 34:**
Deny.

**Request for Admission No. 35:** Admit that in August of 2023 you contacted Dyno Nobel's Human Resources department to report an incident that occurred while working with Mr. Deppe regarding him making inappropriate and discriminatory comments.

**Response to Request for Admission No. 35:**
Admit.

**Request for Admission No. 36:** Admit that following your report to Dyno Nobel's Human Resources department regarding the interaction with Mr. Deppe an investigation was completed.

**Response to Request for Admission No. 36:**
Admit only that Defendant represented to Plaintiff that it investigated the matter and had completed its review. Deny to the extent this Request implies that the investigation was adequate, complete in any meaningful sense, or transparently disclosed to Plaintiff.

**Request for Admission No. 37:** Admit that Dyno Nobel's Human Resources department spoke to you about whether you were comfortable working in the office and offered to allow you to work from home during their investigation of the incident with Mr. Deppe, an offer which you accepted.

**Response to Request for Admission No. 37:**
Admit.

**Request for Admission No. 38:** Admit that on or about August 18, 2023, Dyno Nobel's Human Resources department held a meeting with you to discuss the results of their investigation into the incident with Mr. Deppe.

**Response to Request for Admission No. 38:**
Admit only that a meeting was held on or about August 18, 2023 regarding Plaintiff's complaint about Mr. Deppe. Deny to the extent this Request implies that Defendants clearly disclosed investigation results or corrective measures in a meaningful or complete manner.

**Request for Admission No. 39:** Admit that Dyno Nobel's Human Resources department informed you during the meeting, on or about August 18, 2023, that appropriate disciplinary and corrective actions were being taken with Mr. Deppe.

**Response to Request for Admission No. 39:**
Admit only that Defendant stated words to that effect. Deny to the extent this Request implies that Plaintiff agreed the action was appropriate, knew what action had actually been taken, or considered the response sufficient.

**Request for Admission No. 40:** Admit that on or about September 25, 2024, you contacted Dyno Nobel's Human Resources department to make a complaint regarding alleged discrimination and retaliation by Mr. Roth.

**Response to Request for Admission No. 40:**
Admit.

**Request for Admission No. 41:** Admit that following your September 2024 report alleging discrimination and retaliation by Mr. Roth Dyno Nobel's Human Resources department conducted an investigation.

**Response to Request for Admission No. 41:**
Admit only that Human Resources communicated to Plaintiff that it would review or look into the complaint. Deny to the extent this Request implies that Defendants conducted a thorough, neutral, adequate, or corrective investigation.

**Request for Admission No. 42:** Admit that upon completion of Dyno Nobel's Human Resources department's investigation regarding your allegations of discrimination and retaliation by Mr. Roth, you were informed of the results of the investigation.

**Response to Request for Admission No. 42:**
Admit only that Defendant communicated a high-level conclusion to Plaintiff. Deny to the extent this Request implies that Plaintiff was given meaningful details, supporting findings, or information about any effective corrective action.

**Request for Admission No. 43:** Admit that you did not provide notice to Dyno Nobel or any of their employees of your EEOC intake interview prior to your termination on February 10, 2025.

**Response to Request for Admission No. 43:**
Admit only that Plaintiff does not recall separately informing Dyno Nobel personnel of the specific date and time of her EEOC intake interview before her termination. Plaintiff does not admit that Defendant lacked knowledge of Plaintiff's protected activity or steps toward agency reporting.

**Request for Admission No. 44:** Admit that you do not have documentary evidence establishing that any decision-maker involved in your termination of employment had knowledge of any protected EEOC activity prior to your termination on February 10, 2025.

**Response to Request for Admission No. 44:**

Deny. Plaintiff has documentary evidence of protected EEOC activity before termination, including an EEOC inquiry and intake scheduling information. Plaintiff further lacks access to Defendant's internal communications and therefore cannot admit Defendant's asserted lack of decision-maker knowledge before full discovery.


Annette S. Vernieri
/s/ Annette S. Vernieri

Pro Se Plaintiff

14350 S Lapis Drive

Draper, Utah 84020

vernieri.lawsuit@pm.me

CERTIFICATE OF SERVICE

I certify that on April 12, 2026, I served the foregoing PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSION

via email to:

Bryan K. Benard, Esq. Sarah M. Perkins, Esq.

Holland & Hart LLP

BBenard@hollandhart.com

SMPerkins@hollandhart.com


/s/ Annette S. Vernieri
Annette S. Vernieri
Pro Se Plaintiff
14350 S Lapis Drive

Draper, Utah 84020

vernieri.lawsuit@pm.me

| | |
|---|---|
| Annette S. Vernieri<br><br>14350 S Lapis Drive<br><br>Draper, Utah 84020<br><br>Email: vernieri.lawsuit@pm.me<br><br>Pro Se Plaintiff | UNITED STATES DISTRICT COURT<br><br>DISTRICT OF UTAH<br><br><br>Annette S. Vernieri,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>Dyno Nobel Inc. and Dyno Nobel Limited,<br><br>Defendants.<br><br><br>Case No.: 2:25-cv-00789-DAK-DBP<br><br><br>District Judge Dale A. Kimball<br><br>Chief Magistrate Judge: Dustin B. Pead |

**PLAINTIFF ANNETTE S. VERNIERI'S RESPONSES TO DEFENDANT DYNO NOBEL, INC.'S FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Annette S. Vernieri, proceeding pro se, submits the following objections and responses to Defendant Dyno Nobel, Inc.'s First Set of Interrogatories.

**GENERAL STATEMENT AND OBJECTIONS**

As of the date of these responses, Plaintiff has not completed discovery, investigation, expert development, or trial preparation in this action. Accordingly, these responses are based on information presently known and reasonably available to Plaintiff and are made without waiving the right to supplement, amend, clarify, or correct them as discovery proceeds.

Plaintiff responds to each Interrogatory as understood by Plaintiff. If Defendant later asserts an interpretation different from Plaintiff's reasonable understanding, Plaintiff reserves all rights to object further and to supplement accordingly.

Plaintiff objects generally to each Interrogatory to the extent it is vague, ambiguous, compound, overly broad, unduly burdensome, not proportional to the needs of the case, seeks information already in Defendant's possession, custody, or control, seeks

premature expert or trial disclosures, calls for legal conclusions, or seeks information protected by the attorney-client privilege, work-product doctrine, privacy rights, medical confidentiality, whistleblower protections, or any other applicable privilege or protection. These general objections are incorporated into each response below.

Any answer identifying persons, documents, facts, dates, damages, or contentions is preliminary, non-exclusive, and limited to information presently known to Plaintiff after reasonable inquiry. No response should be construed as adopting Defendant's characterization of events, legal duties, causation, or defenses.

INTERROGATORIES

Interrogatory No. 1: With respect to any response to the Requests for Admissions which is anything other than an unqualified admission, identify the Request, provide an explanation and description of the facts and contentions related to the Request, an explanation of why the Request is not being admitted in part or in whole, and a provide a full explanation and disclosure of all related facts and evidence to support the denial or partial denial.

*RESPONSE INTERROGATORY NO. 1:*
*Plaintiff objects to this Interrogatory because it is overly broad, compound, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks a full explanation and disclosure of all related facts and evidence for every Request for Admission not admitted without qualification. Plaintiff further objects because the Interrogatory improperly seeks premature marshaling of all evidence, contention details, and legal theories before completion of discovery, depositions, and Defendants' full production. Plaintiff also objects to the extent it seeks information protected by the attorney-client privilege or work-product doctrine.*

*Subject to and without waiving these objections, Plaintiff states as follows:*

*Requests concerning termination, alleged reduction in force, restructuring, accommodations, and retaliation were not admitted without qualification because Defendants' Requests embed disputed characterizations, including that Plaintiff's termination was part of a neutral reduction in force or restructuring, that Defendants engaged in a legally sufficient interactive process, that accommodations were reasonable and effective, and that there is no documentary basis to infer knowledge of Plaintiff's protected activity. Plaintiff disputes those characterizations.*

*Requests concerning the identity of Dyno entities and EEOC charges were not admitted without qualification because Defendants' wording appears designed to use technical distinctions among Dyno Nobel Inc., Dyno Nobel Americas, and Dyno Nobel Limited to narrow liability, jurisdiction, or exhaustion issues. Plaintiff's pay and employment records identify Dyno Nobel Inc., while agency filings used Dyno Nobel Americas, and parent-company structures and related materials support Plaintiff's understanding that additional Dyno entities were involved in matters affecting Plaintiff's employment.*

*Requests concerning investigations, complaints, and remedial actions were not admitted without qualification because Plaintiff does not concede that Defendants' investigations were thorough, neutral, complete, transparent, or corrective merely because Defendants communicated that they had looked into concerns or had taken action.*

*Requests concerning EEOC notice and decision-maker knowledge were not admitted without qualification because Plaintiff does not recall separately providing Defendants the exact intake interview date and time, but Plaintiff does not concede that Defendants lacked notice of Plaintiff's protected activity or lacked access to documentary information relevant to knowledge.*

*Plaintiff will supplement this response as appropriate through continued discovery and pretrial disclosures.*

Interrogatory No. 2: Please identify each and every person you expect to call as a witness at the hearing of this matter, including expert witnesses, and for each such person state the subject matter on which he or she is expected to testify and the substance of the facts and opinions to which he or she is expected to testify.

RESPONSE Interrogatory No. 2:
*Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and premature to the extent it seeks each and every witness and the full substance of all expected testimony at this stage of the case. Plaintiff further objects that expert witnesses, if any, will be disclosed in accordance with the Court's scheduling order and applicable rules. Plaintiff also objects to the extent the Interrogatory seeks privileged information or attorney work product regarding witness selection, strategy, or anticipated testimony presentation.*

*Subject to and without waiving these objections, Plaintiff identifies the following persons who may have discoverable information and who may be witnesses, subject to supplementation:*

*Plaintiff, Annette Vernieri.*

*Megan Lillrose.*

*Kelly Carter.*

*Jace Bastian.*

*Courtney, last name presently unknown.*

*Rick Roth.*

*Finance leadership and decision-makers, names to be supplemented.*

*Adaobi Ezeh, to the extent non-privileged.*

*Individuals involved in any alleged restructuring, reduction in force, or termination decision, to be supplemented.*

*Cedar, last name presently unknown.*

*Lorraine McLellan.*

*Nathan Deppe.*

*Ammon Veil, LCSW, subject to privilege, waiver, motions practice, and admissibility rulings.*

*Agency or administrative witnesses, if necessary and admissible.*

*Plaintiff has not completed discovery or trial preparation and has not made final witness determinations. This response is preliminary and non-exclusive.*

Interrogatory No. 3: Please identify each and every document or other physical or tangible object that you intend to introduce into evidence at the hearing of this matter.

*RESPONSE Interrogatory No. 3:*
*Plaintiff objects to this Interrogatory as premature to the extent it seeks a final exhibit list before the close of discovery, motion practice, expert disclosures, and pretrial disclosure deadlines. Plaintiff further objects because the Interrogatory calls for attorney work product and trial strategy to the extent it seeks a definitive list of what Plaintiff intends to introduce at hearing or trial.*

*Subject to and without waiving these objections, Plaintiff identifies the following non-exclusive categories of materials that may be used, subject to supplementation and the Court's orders:*

*Employment records.*

*Emails, Teams messages, calendar invites, meeting notes, and related communications.*

*Accommodation-related materials, including HR ticket records and provider letters.*

*Complaint and investigation materials.*

*EEOC, UALD, and other agency materials.*

*Termination, restructuring, severance, and OWBPA-related documents.*

*Job-search, unemployment, and post-termination employment records.*

*Medical or provider-related materials to the extent Plaintiff elects to rely on them and they are admissible.*

*Workers' compensation, insurance, and disavowal-related materials.*

*Demonstratives, timelines, summaries, and compilations derived from admissible evidence.*

*Plaintiff reserves the right to supplement or amend this response.*

Interrogatory No. 4: Please describe in detail and separately the nature and the amount of any and all damages you claim under each of your claims for relief, and describe in detail the calculations used in determining those damages (including any assumptions therein), and state all facts and opinions that you contend support such damage claims.

*RESPONSE Interrogatory No. 4:*
*Plaintiff objects to this Interrogatory to the extent it seeks a final, exhaustive calculation of "any and all" damages and the complete facts and opinions supporting those calculations before the completion of discovery and any expert disclosures. Plaintiff also objects to the extent the Interrogatory seeks information protected by the attorney-client privilege or work-product doctrine. Subject to and without waiving these objections, Plaintiff provides the following good-faith, preliminary damages estimates, which are subject to refinement as additional information becomes available and as experts are retained.*

*Back Pay (wages and ADEA liquidated component)*

*Nature: Lost wages and salary from the date of termination (February 10, 2025) to the present and through a reasonable back-pay period, including an equal amount as liquidated damages for willful age discrimination under the ADEA.*

*Amount: Plaintiff currently estimates back pay (including the liquidated component) at approximately $278,070.*

*Basis/Calculation: This figure is based on Plaintiff's salary and expected raises/bonuses at Dyno Nobel compared to her actual and projected earnings following termination, over the relevant back-pay period, with an equal amount added as liquidated damages assuming a willful violation. Precise calculations will be refined with payroll records and, if necessary, expert economic analysis.*

*Back Pay – Lost Benefits*

*Nature: Value of lost fringe benefits (health insurance, retirement contributions, bonus potential, and similar benefits) associated with her former position.*

*Amount: Estimated at $29,827, representing approximately ten percent of the wage back-pay figure.*

*Basis/Calculation: A 10% benefits load applied to Plaintiff's lost wage back pay; to be refined using actual benefits data.*

*Tuition Reimbursement*

*Nature: Educational assistance and tuition reimbursement benefits Plaintiff reasonably expected to receive as part of her employment and career progression.*

*Amount: Estimated at $82,000 (fixed).*

*Basis/Calculation: Based on program costs and the tuition reimbursement structure available to Plaintiff at Dyno Nobel, as reflected in benefits documentation and educational invoices.*

*Medical and Therapy Expenses*

*Nature: Out-of-pocket medical, counseling, and therapy expenses incurred as a result of Defendant's conduct, including treatment with Ammon Veil, LCSW, and other providers.*

*Amount: Currently estimated at $11,981.*

*Basis/Calculation: Sum of known bills and receipts for treatment, copays, and medications reasonably attributable to the emotional and physical harm caused or exacerbated by Defendant's discrimination, retaliation, and termination.*

*Front Pay (including lost Finance Director path)*

*Nature: Future lost earnings and benefits Plaintiff expects to incur because of the harm to her career trajectory, including loss of the opportunity to move into a Finance Director role, discounted to present value.*

*Amount: Plaintiff currently estimates a range of approximately $212,355 (low), $1,672,508 (likely), and $4,134,347 (high) in present-value terms.*

*Basis/Calculation: These figures are based on projected earnings at Dyno Nobel (and on the Finance-Director career path) over a reasonable future period compared to projected earnings in alternative employment, discounted to present value using standard economic assumptions. Plaintiff anticipates retaining or relying on an economic expert to refine these calculations.*

*Emotional Distress / Non-economic Damages*

*Nature: Emotional pain, suffering, humiliation, anxiety, loss of enjoyment of life, and other non-economic harm resulting from Defendant's discrimination, retaliation, and termination.*

*Amount: Plaintiff currently estimates a range of approximately $10,437 (low), $200,000 (likely), and $300,000 (high), subject to applicable statutory caps.*

*Basis/Calculation: These estimates are based on Plaintiff's testimony, the duration and severity of her symptoms, the need for therapy and medical treatment, and anticipated testimony from her mental-health providers, including Ammon Veil, LCSW. Exact amounts are within the province of the jury, but Plaintiff provides these ranges as good-faith estimates.*

*Punitive Damages / § 1981-related Damages (if available)*

*Nature: Punitive damages or similar enhanced damages to punish and deter intentional, willful, or reckless discrimination and retaliation, to the extent authorized by 42 U.S.C. § 1981 and/or applicable state law.*

*Amount: Plaintiff currently estimates a range of approximately $200,000 (low), $350,000 (likely), and $500,000 (high), subject to any statutory caps and the Court's instructions.*

*Basis/Calculation: Based on the seriousness and duration of the misconduct, the involvement of HR and management, and applicable legal standards for punitive or enhanced damages.*

*Attorney's Fees and Costs*

*Nature: Reasonable attorney's fees and litigation costs recoverable under the fee-shifting provisions of Title VII, the ADA, the ADEA, § 1981, and related statutes.*

*Amount: Not yet fully calculable; Plaintiff presently estimates that fees and costs through trial could reasonably fall in the range of up to approximately $250,000, depending on motion practice, discovery, and trial length.*

*Basis/Calculation: To be determined based on actual hours expended, reasonable hourly rates, and costs incurred, and subject to Court approval.*

*Total and Settlement Target (illustrative only)*

*Based on the preliminary estimates above, Plaintiff's current rough totals fall in the range of approximately $823,127 (low), $2,622,842 (likely), and $5,584,682 (high), before any adjustments or offsets.*

*Plaintiff emphasizes that these damage amounts and ranges are preliminary, provided in good faith based on current information, and will be refined through ongoing discovery, production of additional records (including payroll, benefits, and medical records), and, as appropriate, expert analysis. Plaintiff expressly reserves the right to amend or supplement these calculations and supporting facts as discovery proceeds and in accordance with the Federal Rules of Civil Procedure.*

Interrogatory No. 5: Please identify and describe in detail, including dates and names of participants, any and all facts that support your contention that you were discriminated against on the basis of a disability in violation of Americans with Disabilities Act and the Utah Antidiscrimination Act.

*RESPONSE Interrogatory No. 5:*

*Plaintiff objects because this Interrogatory is overly broad and seeks any and all facts supporting Plaintiff's disability discrimination claim, which effectively seeks the entirety of Plaintiff's case. Plaintiff further objects to the extent it seeks premature marshaling of all evidence or information protected by privilege.*

*Subject to and without waiving these objections, Plaintiff provides the following non-exclusive summary of presently known facts:*

*Plaintiff disclosed disabling conditions and functional limitations to Defendants and sought accommodations supported by provider documentation and HR communications beginning no later than early 2024.*

*Plaintiff submitted formal accommodation requests through HR systems and follow-up communications, including requests relating to workspace, sensory and stress triggers, scheduling of HR communications, and assistance needed to perform work effectively.*

*Defendants delayed, resisted, only partially implemented, or ineffectively implemented requested accommodations. Plaintiff contends that workspace changes characterized by Defendants as accommodations had the practical effect of isolating Plaintiff from team members and leadership.*

*Plaintiff contends that Defendants resisted allowing Plaintiff a support person of Plaintiff's choosing in accommodation discussions and instead structured meetings in a manner Plaintiff experienced as adversarial and stressful.*

*On February 10, 2025, Plaintiff raised renewed accommodation-related concerns, including scheduling and communication concerns related to anxiety triggers. Plaintiff contends Defendants did not meaningfully engage with those concerns and instead terminated Plaintiff the same day.*

*Plaintiff further contends that non-disabled employees or employees not seeking accommodation were treated more favorably with respect to workplace integration, access to leadership, opportunities, and scrutiny.*

*Plaintiff will supplement with additional details, dates, names, and documents as discovery continues.*

Interrogatory No. 6: Please identify and explain each and every verbal or written warning you received from Defendant during your employment and the reason for each warning.

<span style="color:red">RESPONSE Interrogatory No. 6:</span>
*Plaintiff objects to the extent the term warning is vague and may improperly characterize routine feedback, evaluations, or isolated comments as formal discipline.*

*Subject to and without waiving this objection, Plaintiff states that Plaintiff did not receive any formal written warning, formal verbal warning, Performance Improvement Plan, or formal disciplinary action during employment with Defendants.*

*To the extent Defendants may contend certain communications were warning-like, Plaintiff identifies the following without conceding they were warnings:*

*FY23 annual performance review.*

*FY24 mid-year review.*

*A private comment by Rick Roth regarding concern about Plaintiff's financial analysis.*

*Rick Roth's on or about August 15, 2024 feedback email.*

*Cancelled one-on-one meetings in mid-2024.*

*Plaintiff does not concede that these items constituted warnings in the disciplinary sense.*

Interrogatory No. 7: Please identify every person interviewed by you or on your behalf in connection with this charge of discrimination and the date and place of such interview.

*RESPONSE Interrogatory No. 7:*

*Plaintiff objects to the extent this Interrogatory seeks privileged communications, attorney work product, or information about confidential attorney consultations.*

*Subject to and without waiving these objections, Plaintiff identifies the following:*

*EEOC personnel, including intake and follow-up communications.*

*UALD personnel following termination.*

*Attorney consultations, with identity and substance withheld on grounds of privilege and work product.*

*Plaintiff did not conduct formal witness interviews of coworkers in the manner implied by this Interrogatory.*

Interrogatory No. 8: Please identify every health care provider including, but not limited to, medical doctors, psychiatrists, psychologists, counselors, therapists, and nurse practitioners, who have evaluated or treated you for any reason, including all individual, marital or family reasons, since January 1, 2022.

*RESPONSE Interrogatory No. 8:*

*Objection. This Interrogatory is overbroad, invasive, and disproportionate because it seeks all health care providers for any reason since January 1, 2022, including treatment wholly unrelated to the claims or defenses in this case.*

*Subject to and without waiving these objections, Plaintiff identifies the following providers whose treatment may be relevant to claims or damages asserted here:*

*Ammon Veil, LCSW.*

*Angela White, PA.*

*Uma Dorn, PhD.*

*Plaintiff does not waive objections as to unrelated medical treatment or providers. Plaintiff reserves the right to supplement this response pursuant to Fed. R. Civ. P. 26(e).*

Interrogatory No. 9: For each health care provider identified in response to Interrogatory No. 8 identify the dates of care or treatment by each such health care provider; the diagnosis and prognosis made by each such health care provider; any treatment given or prescribed by each such health care provider; and all medication prescribed by each such health care provider, including the name of the medication, its purpose, the dosage, and the period of time over which the medication was taken.

*RESPONSE Interrogatory No. 9:*

*Objection. This Interrogatory seeks detailed medical and medication information beyond what is presently relevant and proportional, invades Plaintiff's medical privacy, and seeks privileged or protected health information.*

*Subject to and without waiving these objections, Plaintiff responds as follows:*

*Ammon Veil, LCSW: Therapy began approximately June 2024 and remains ongoing. Mr. Veil does not prescribe medication.*

*Angela White, PA: Plaintiff sought treatment relating to anxiety and related symptoms. Ms. White has prescribed medication. Plaintiff objects at this time to providing a full medication inventory, dosage history, and duration absent a more tailored request, protective order, or Court ruling.*

*Uma Dorn, PhD: Evaluation began approximately April 2025, after termination. ADHD and Autism Spectrum Disorder were confirmed in approximately August 2025. Dr. Dorn does not prescribe medication.*

*Plaintiff reserves all objections to broader medical disclosure.*
*Plaintiff reserves the right to supplement this response pursuant to Fed. R. Civ. P. 26(e).*

Interrogatory No. 10: Identify whether any medical condition(s) existed (or exist) that prevented (or prevent) you from seeking, obtaining, or continuing employment, describe the nature of the condition(s), including the cause of the condition(s), the period of time the condition existed (or exists), and the identity of the health care provider(s) who diagnosed and have treated or are currently treating you for the condition(s).

*RESPONSE Interrogatory No. 10:*

*Plaintiff objects to the extent this Interrogatory assumes that any medical condition prevented Plaintiff from seeking, obtaining, or continuing employment.*

*Subject to and without waiving this objection, Plaintiff states that no medical condition has prevented Plaintiff from seeking employment.*

*Plaintiff has experienced emotional distress, anxiety, trauma-related symptoms, and other mental-health effects that Plaintiff contends were caused or exacerbated by Defendants' conduct. Plaintiff has also since been diagnosed with ADHD and Autism Spectrum Disorder, which Plaintiff contends existed during employment but were then undiagnosed. Those conditions may have affected functioning and workplace*

*experience, but Plaintiff does not contend they prevented Plaintiff from seeking work. Treatment providers identified above include Ammon Veil, Angela White, and Uma Dorn.*

*To the extent Plaintiff experienced difficulty obtaining replacement employment after termination, Plaintiff contends that such difficulty was primarily attributable to the circumstances of termination, litigation demands, and related consequences rather than an inability to seek employment.*

Interrogatory No. 11: Identify by caption, style, court or agency, court, cause, claim or charge number, and date any and all legal actions in which you have participated, and identify your capacity in each including, but not limited to, plaintiff, respondent, petitioner, defendant, charging party, claimant, witness or other, and the outcome of any and all such court actions or proceedings.

*RESPONSE Interrogatory No. 11:*

*Plaintiff objects to the extent this Interrogatory seeks disclosure of whistleblower filings or regulatory complaints protected by confidentiality statutes, privileges, or other protections, and further objects to the extent it seeks proceedings wholly unrelated to this litigation.*

*Subject to and without waiving these objections, Plaintiff identifies the following matters relevant to this case or Plaintiff's employment-related claims:*

*This action, pending in the United States District Court for the District of Utah.*

*EEOC Charge No. 540-2024-04999.*

*UALD-related contact following termination.*

*NLRB Case No. 27-CA-363299.*

*OFCCP Complaint No. I00318616.*

*Plaintiff further states that Plaintiff has made protected whistleblower-related submissions to certain agencies and objects to disclosing identifying details of those protected whistleblower matters absent Court order after appropriate protections.*

Interrogatory No. 12: Please explain and identify each and every complaint you made to Defendant, along with Defendant's response, regarding any alleged unlawful conduct including, but not limited to, the conduct alleged in your Complaint.

*RESPONSE Interrogatory No. 12:*

*Plaintiff objects because this Interrogatory is overly broad and seeks each and every complaint, as well as legal characterization of alleged unlawful conduct. Plaintiff also objects to the extent it seeks privileged information or information already contained in Defendants' own records.*

*Subject to and without waiving these objections, Plaintiff identifies the following non-exclusive categories of complaints made to Defendants:*

*Complaint regarding the Hawaiian Shirt/Tropical Thursday event in approximately on or about July 2023.*

*Complaint regarding Nathan Deppe in approximately on or about August 2023.*

*Complaints relating to accommodations and HR process in 2024 and 2025.*

*Complaint regarding discrimination and retaliation by Rick Roth in approximately September 2024.*

*Complaint regarding severance and OWBPA deficiencies after February 10, 2025.*

*Complaint regarding tuition reimbursement delays in late 2024 into early 2025.*

*Complaint regarding the February 10, 2025 accommodation-related communication and same-day termination.*

*Complaint regarding unauthorized workers' compensation or insurance-related filing discovered in late 2025.*

*Defendants' detailed responses are reflected in Defendants' own HR, email, meeting, severance, and administrative records, as well as in produced and to-be-produced documents.*

Interrogatory No. 13: Please identify the following information with regard to your efforts or attempts to find employment after your employment ended with Defendant (including any such efforts undertaken before your employment ended with Defendant to find other employment), the name, address, and phone number of each employer with whom you applied for a job and the date of such application; whether you had an interview for any job and, if so, identify the person with whom you interviewed; the terms of any and all offers of employment extended to you; if you declined any job offer, state the reason or reasons for so declining; and if you accepted any job offer, state the duration of such employment and any and all changes to the terms of such employment as compared to the original terms thereof.

*RESPONSE Interrogatory No. 13:*

*Plaintiff objects to this Interrogatory to the extent it is overly broad, unduly burdensome, and seeks a level of detail more appropriately addressed through production of application logs and related documents.*

*Subject to and without waiving these objections, Plaintiff states that Plaintiff began seeking employment promptly after termination and maintained a job-application log reflecting approximately 109 applications between approximately February 11, 2025 and August 16, 2025.*

*Plaintiff received one offer of employment from the State of Utah, Department of Government Operations, for the position of Purchasing Business Analyst under the Return Utah program at approximately $32.00 per hour for 2,080 annual hours. Plaintiff accepted and began employment on or about November 3, 2025. Plaintiff did not decline any job offers. Plaintiff was later promoted to Sr. Business Analyst effective March 28, 2026.*

*Prior to termination, Plaintiff also explored internal opportunities at Dyno Nobel.*

*Plaintiff's post-termination job-search efforts, interview activity, and application details are reflected in Plaintiff's application records and related documents and may be supplemented.*

Interrogatory No. 14: Identify each employer (including self-employment), other than Defendant, for whom you have worked at any time following your termination on February 10, 2025, to the present, including the dates of such employment, the position you held, your reason for leaving, and the terms of your compensation.

RESPONSE Interrogatory No. 14:

*Since termination, Plaintiff has worked for the State of Utah, Department of Government Operations, 4315 S 2700 W, Taylorsville, Utah 84129.*

*Plaintiff held the position of Purchasing Business Analyst from November 3, 2025 through March 27, 2026, and was promoted effective March 28, 2026 to Sr. Business Analyst.*

*Initial compensation was approximately $32.00 per hour for 2,080 annual hours, approximately $66,560 annually. Plaintiff remains employed there. Plaintiff has not engaged in other employment or self-employment since February 10, 2025.*

*Plaintiff reserves the right to supplement regarding any finalized compensation adjustment associated with the promotion.*

Interrogatory No. 15: For any monies of any kind or character whatsoever received by you since the date of your departure from Defendant, from sources including, but not limited to, earnings, unemployment compensation, workers' compensation, disability benefits of any kind, welfare payments, social security benefits of any kind or income from any pension, profit sharing or annuity plan, identify the full name and address of the individual, person, party, governmental entity or organization from which you received such monies; the date(s) you received said monies; the amount(s) of monies so received; whether you will receive further monies and for how long; the reason you received said monies; and identify all documents related thereto.

RESPONSE Interrogatory No. 15:

*Plaintiff objects to the extent this Interrogatory seeks exact information already in Defendants' possession as to final wage payments or seeks burdensome compilation of information equally reflected in records.*

*Subject to and without waiving these objections, Plaintiff identifies the following categories of monies received since termination:*

*Final wages and any PTO payout from Defendants, in amounts reflected in Defendants' records.*

*Unemployment insurance benefits from the Utah Department of Workforce Services, approximately from late February 2025 through mid-August 2025, after which benefits ceased upon Plaintiff's employment with the State of Utah.*

*Employment earnings from the State of Utah, Department of Government Operations, beginning approximately on or about November 3, 2025 and continuing.*

*Plaintiff did not receive workers' compensation benefits, disability benefits, welfare, social security, pension distributions, profit-sharing distributions, annuity payments, or other similar monies not otherwise identified here.*

*Plaintiff further states that although Defendants or a carrier submitted a workers' compensation-related filing referencing alleged discrimination, Plaintiff disavowed that filing and did not seek or receive workers' compensation benefits based on it.*

*Plaintiff will supplement with documents and further detail as appropriate.*

Interrogatory No. 16: Please explain and identify each and every request for accommodation you made to Defendant, including the date of such request, Defendant's response(s) to each request.

*RESPONSE Interrogatory No. 16:*

*Plaintiff objects because this Interrogatory is overly broad to the extent it seeks each and every request without reasonable limitation and because the full accommodation history is reflected in documents already existing in email, HR ticket, calendar, and related records.*

*Subject to and without waiving these objections, Plaintiff states as follows:*

*Plaintiff sought accommodation-related assistance beginning no later than early 2024. On or about March 9, 2024, Plaintiff submitted a written reasonable accommodation request through HR systems. Thereafter Plaintiff exchanged communications with HR personnel including Megan Lillrose, Brenda Sanders, Tess Gordon, and Jace Bastian concerning provider documentation, requested accommodations, workplace conditions, and implementation issues.*

*Accommodation issues and requests included communication methods, scheduling concerns, flexibility for provider-related needs, leave-related flexibility, workspace changes, reduction of stressors and sensory triggers, additional support or guidance concerning work systems, mentoring support, and requests concerning participation of a support person in accommodation discussions.*

*Defendants responded by requesting documentation, scheduling or attempting to schedule meetings, discussing workspace changes, and implementing certain limited or partial measures they characterized as accommodations. Plaintiff contends those measures were delayed, incomplete, isolating, inconsistently applied, or ineffective.*

*On February 10, 2025, Plaintiff again raised accommodation-related communication concerns. Plaintiff contends Defendants terminated Plaintiff that same day rather than meaningfully engaging with the renewed request.*

*The full chronology is reflected in the underlying HR tickets, emails, meeting records, and related documents.*

Interrogatory No. 17: Please fill in your date of birth (DOB), as well as sign, and date the attached Limited Authorization to Disclose Limited Medical Information and return it to counsel for Defendant. This will allow Defendant to subpoena and obtain your relevant medical records.

*RESPONSE TO INTERROGATORY NO. 17:*

*Plaintiff objects to this Interrogatory and the attached authorization because the request is overbroad in time and scope, seeks private medical information beyond what is reasonably necessary, and attempts to obtain records by blanket authorization rather than through properly tailored discovery or Court supervision.*

*Subject to and without waiving these objections, Plaintiff states that Plaintiff's date of birth is November 20, 1982. Plaintiff declines to execute the proposed blanket authorization. Plaintiff remains willing to consider appropriately limited and tailored discovery concerning medical conditions actually placed at issue in this case.*

/s/ Annette S. Vernieri
Annette S. Vernieri
Pro Se Plaintiff
14350 S Lapis Drive
Draper, Utah 84020
vernieri.lawsuit@pm.me

CERTIFICATE OF SERVICE

I certify that on April 12, 2026, I served the foregoing PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANTS via email to:

Bryan K. Benard, Esq. Sarah M. Perkins, Esq.

Holland & Hart LLP

BBenard@hollandhart.com

SMPerkins@hollandhart.com


/s/ Annette S. Vernieri
Annette S. Vernieri
Pro Se Plaintiff
14350 S Lapis Drive
Draper, Utah 84020
vernieri.lawsuit@pm.me

# EXHIBIT 3

## <u>Limited Authorization to Disclose Limited Medical Information</u>

I, Annette S. Vernieri (DOB __/__/____), understand that my primary care doctor(s), and other health care provider(s), have created healthcare records containing confidential medical information about me that may be related to the litigation I am currently involved in, *Annette S. Vernieri vs. Dyno Nobel, Inc. et al.* Civil No. 2:25-cv-00789.

By signing this form, I am authorizing the release and disclosure of all of my confidential patient, medical, health care, prescription, medication, lab records, and pharmaceutical information, as identified below, to **Bryan Benard and Sarah Perkins, Holland & Hart LLP, 222 S. Main Street, Suite 2200, Salt Lake City, UT 84101; via email to BBenard@hollandhart.com and SMPerkins@hollandhart.com; or to Holland & Hart's designees** for use in the litigation captioned, *Annette S. Vernieri vs. Dyno Nobel, Inc. et al.* Civil No. 2:25-cv-00789, pending in the United States District Court for the District of Utah.

After Holland & Hart receives any records or information by the use of this Authorization, it shall provide a copy of all such records or information to me within a reasonable timeframe. Any and all records or information released arising from this Authorization shall be used ONLY for the above case and shall be deemed CONFIDENTIAL pursuant to the Court's Protective Order issued in this case.

## <u>INFORMATION TO BE RELEASED:</u>

I am authorizing the disclosure of **<u>all patient health care information</u>**, including, but not limited to all medical reports and records, medical correspondence, psychiatric and/or psychological reports and records, clinical notes, nurses' notes, patient's history results, copies of x-rays, MRIs or other images; interpretation of x-rays, MRI's or other tests (including a copy of the report), diagnosis and prognosis; any hospital operational logs, operative reports, informed consent reports, emergency logs, committee reports, psychiatric reports and records, communicable diseases, drug and alcohol usage/history, physical therapy records, all out-patient records; hospital bills, bills for services rendered, payments received; MMPI results, test scores, raw data and interpretive reports; results, raw data, test scores, and interpretive reports for any other personality testing or psychological or psychiatric testing; provider medical history, examination and progress notes, tests, laboratory reports, prescriptions, and certifications of medical conditions; and any other relevant and material information in your possession for the period **<u>beginning January 1, 2022, through present.</u>**

## <u>HOW THIS FORM MAY AFFECT ME AND MY RIGHTS:</u>

**Revoking Authorization.** I understand that I have the right to revoke this authorization, except to the extent that a health care provider has already disclosed my medical information in reliance on this authorization. I understand that my revocation is effective only if it is in writing. To revoke my authorization, I understand that I must send a written request for revocation to Bryan Benard and Sarah Perkins, Holland & Hart LLP, 222 S. Main Street, Suite 2200, Salt Lake City, UT 84101 and via email to BBenard@hollandhart.com and SMPerkins@hollandhart.com.

**Re-Disclosure of Medical Information.** I understand that if my medical information is used or disclosed pursuant to this authorization, it may be subject to re-disclosure by a person who receives my medical information. I understand that this re-disclosure may not be protected by the applicable privacy laws.

**Refusing to Sign Authorization.** I understand that my health care providers may not condition treatment, payment, enrollment or eligibility for benefits on whether or not I sign this authorization.

**Copy of Authorization.** A photocopy, facsimile, emailed image, or other such reproduction of this Authorization, which contains my signature, shall be considered as effective and valid as the original and shall be honored by those to whom it is sent or provided. I understand that I have the right to receive a copy of this authorization.

**EXPIRATION DATE:**

**This authorization will remain in effect until and expires on December 31, 2026.**

<u>**SIGNATURE:**</u>                                                    <u>**DATE:**</u>


_____          _____
Annette S. Vernieri

37303301_v1

Page **2** of **2**

# EXHIBIT 4



Subpoena for Records – <span style="background:black;color:black">████████████</span>

To Whom It May Concern,

I am in receipt of the subpoena dated 4/14/26 requesting records related to the above-referenced individual.  I am formally objecting to the subpoena as currently issued.

As a licensed mental health provider in Utah, I am bound by federal confidentiality laws, including HIPAA, as well as applicable state laws protecting mental health records. The subpoena provided does not include a valid authorization signed by the client, a court order issued by a judge, or sufficient documentation demonstrating that the client has been properly notified of the request and given an opportunity to object.

Accordingly, I am unable to release the requested records at this time.

Please provide one of the following in order for me to proceed:
- A valid, HIPAA-compliant authorization signed by the client;
- A court order signed by a judge; or
- Documentation demonstrating proper notice to the client in compliance with applicable laws.

Until such documentation is received, I must decline to release any confidential information in order to remain compliant with legal and ethical obligations.

Sincerely,
Ammon Veil LCSW

 admin@unveiledmindtherapy.com

 unveiledmindtherapy.com     385-477-9723

# Provider ♥

Date : 4/18/2026

Provider Name : Foothill Family Clinic

To: Holland and Hart LLP

███████████████████

We are in receipt of your request and authorization for the medical records of the aboved name patient and are unable to provide the information you requested due to the following reason(s):

- ☐ Patient identity cannot be confirmed. Please provide additional information such as Maiden Name, Date of Birth, Social Security Number, Date of Service
- ☑ Invalid Authorization.  Per 45 CFR 164.508 (a)(1), we may not release medical request without a HIPAA compliant authorization.  Please see below what is needed to fulfill this request
    - ☐ Missing valid HIPAA compliant authorization according to the Standards for Privacy of Health Information. Enclosed is a valid HIPAA compliant authorization
    - ☑ The following are missing from the authorization provided:
        - ☐ Patient Full Legal Names
        - ☐ Patient Date of Birth
        - ☐ Name of provider authorized to release the information
        - ☐ Name of individual/company or provider authorized to receive the requested information.
        - ☐ Specific information to be disclosed
        - ☐ Sensitive information release
        - ☐ Missing right to revoke statement
        - ☐ Identify purpose of disclosure
        - ☐ Authorization expiration; Specific date, event or condition for which consent will expire unless revoked earlier, and a statement that consent can be revoked, but not retroactive to the disclosure of information made in good faith.
        - ☐ Authorization has expired, please provide new authorization.
        - ☐ Signature of patient or legal representative
        - ☐ Date authorization was signed.
- ☐ No treatment for date of service, procedure or diagnosis you requested were found.
- ☐ Please provide a signed and dated letter of representation from _____ which designates _____ to act on their behalf for the specified purpose.
- ■ Other: **Film/Images not found in EMR.**

If you have any questions, please feel free to contact our Customer Service Department at 855.524.2378.

| | |
|---|---|
| **From:** | Uma Dorn |
| **To:** | Bryan Benard |
| **Cc:** | Sarah M. Perkins |
| **Subject:** | Subpoena for Records |
| **Date:** | Thursday, April 30, 2026 7:03:01 PM |

**External Email**

Hello,

I am writing to acknowledge receipt of the subpoena on 4/24/2026 regarding [Case Number 2:25 -cv-00789].

Please be advised that I can neither confirm nor deny whether the individual named in the subpoena is or has ever been a client of this practice. Any such information is itself protected under applicable confidentiality laws and regulations.

In the event that the named individual is a client, please be further advised that the release of any records or information would require one of the following:

1. A signed and valid Authorization/Release of Information executed by the client; or
2. A valid court order for the disclosure of such records.

If you have any additional questions, please feel free to contact me.

Uma P. Dorn, PhD
Licensed Psychologist
Salt Lake Psychology
uma.dorn@slcpsych.com
Ph# 801-214-8688
Fax # 855-461-3577
www.slcpsych.com
She/her/hers - What's this?
**I am residing on the traditional and ancestral homeland of the Shoshone, Paiute, Goshute, and Ute Tribes**

In compliance with the Health Portability and Accountability Act "HIPAA" (rule 104-91), this message and any attachments are intended only for use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.
If the reader of this electronic message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination,distribution or copying of this communication is strictly prohibited. If you have received this communication in error or it was forwarded to you without permission from Dr. Dorn, please FORWARD this message back to the sender at the email address above, DELETE this message from all mailboxes and any other electronic storage medium and DESTROY all copies. Thank you.